UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
═══════════════════════════════════════

DEDRICK WILLIAMS, MARQUESSA PAGE,
CAMILLE SMITH individually and
on behalf of a Class of others similarly
situated,

                               Plaintiffs,

                                                             DECISION AND ORDER
           v.                                           06-CV-291A

THE COUNTY OF NIAGARA, et al.,

                               Defendants.
═══════════════════════════════════════

## BACKGROUND

Plaintiffs move for class certification in this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, alleging federal civil rights violations stemming from defendant Niagara County's alleged practice and policy of strip searching all pretrial detainees admitted to the Niagara County Jail ("NCJ") on charges of misdemeanors or lesser crimes, regardless of whether there was reasonable suspicion that such detainees possessed contraband or weapons. Plaintiffs rely on Second Circuit precedent holding that "persons charged with a misdemeanor and remanded to a local correctional facility . . . have a right to be free of a strip search absent reasonable suspicion that they are carrying contraband or weapons[.]" Shain v. Ellison, 273 F.3d 56, 66 (2d Cir.2001). The complaint seeks declaratory and injunctive relief, class certification, compensatory damages, punitive damages, and attorney's fees.

Plaintiffs seek certification of the following class:

> All persons who have been or will be placed into the custody of he Niagara County Jail after being charged with misdemeanors, violations, violations or probation or parole, traffic infractions, civil commitments or other minor crimes and were or will be strip searched upon their entry into the Niagara County Jail pursuant to the policy, custom and practice of the Niagara County Sheriff's Department and the County of Niagara. The class period commences on May 5, 2003 and extends to the date on which the Niagara County Sheriff's Department and/or the County of Niagara are enjoined from, or otherwise cease, enforcing their unconstitutional policy, practice and custom of conducting strip searches absent reasonable suspicion. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

Plaintiffs request that the Court certify this action as a money damages class action under Rule 23(b)(3) and/or an injunctive relief class action under Rule 23(b)(2).  In the alternative, plaintiff requests partial certification under Rule 23(c)(4).

The defendants contend that they have two different policies with regard to the search of incoming detainees at the NCJ, depending on the location in Niagara County from which the detainee is received.  Pursuant to Policy 1109, all detainees received from the City of Niagara Falls, City of Lockport and City of North Tonawanda are stripped searched and subject to a body cavity search, regardless of the crime charged and without reasonable suspicion.  Defendants argue that because such detainees are initially detained in a city facility upon their arrest *(e.g.*, City of Niagara Falls Police Department), they are already in the "system" and are therefore subject to strip and body cavity searches pursuant to the Second Circuit's decision in <u>Covino v. Patrissi</u>, 967 F.2d 73 (2d Cir. 1992) (random body cavity searches of **prison** inmates is constitutional because such searches are related to legitimate penological interests and inmates did not show reasonable alternatives would be fully effective).  In other words,

2

for the purpose of being subject to strip and body cavity searches, defendants equate such detainees to prison inmates.

The second policy, Policy 1201, applies to all other detainees arrested in any other part of Niagara County and brought directly to the NCJ.  For example, someone arrested in the Town of Lewiston is brought directly to the NCJ.  Under Policy 1201, such detainees are not automatically subject to being strip searched.  Instead, they are subject to being strip searched only if there is reasonable suspicion that they possess contraband or a weapon.  All such detainees are, however, subject to a "clothing change-out" procedure, whereby they must change into a jail uniform.  Defendants argue that such a procedure does not constitute a strip search and is constitutional.

With regard to Policy 1109, plaintiffs reply that detainees are not the equivalent of prison inmates and therefore Covino does not apply.  See Iqbal v. Hasty, 490 F.3d 143, 170-72 (2d Cir. 2007) (distinguishing between Shain and Covino based on the type of facility involved).   With regard to Policy 1201, plaintiffs argue that the "clothing change-out" procedure is the equivalent of a strip search and is therefore unconstitutional. Kelsey v. County of Schoharie, 2007 WL 603406 at *6 (N.D.N.Y. Feb. 21, 2007) (denying county defendant's motion for summary judgment that clothing exchange procedure was constitutional as there were disputed issues of fact as to whether the detainees were required to disrobe in front of  correctional officers, who probably observed the inmates' bodies) (citing Marriott v. County of Montgomery, 227 F.R.D. 159, 169 (N.D.N.Y.2005), aff'd, 2005 WL 3117194 (2d Cir. Nov. 22, 2005).

For the reasons stated, the Court grants class certification, but not of the

3

class proposed by the plaintiffs.  Instead, the Court certifies two separate classes, one for detainees strip searched pursuant to Policy 1109 and one for detainees subject only to the "clothing change-out" procedure under Policy 1201.

## DISCUSSION

A.   *Applicable Law*

The certification of class actions is governed by Rule 23, provides in pertinent part:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> * * *
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

>adjudicating the controversy. The matters pertinent to these findings include:
>
>>(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>>(D) the likely difficulties in managing a class action.
>
>(c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.
>
> * * *
>
>(4) Particular Issues. When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

Most courts that have addressed class certification in the jail strip search context have proceeded under Rule 23(b)(3). See, e.g., In re Nassau County Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006); Mitchell v. County of Clinton, 2007 WL 1988716 (N.D.N.Y. Jul. 5, 2007). In order to achieve class certification pursuant to Rule 23(b)(3), plaintiffs must (1) satisfy the four requirements of Rule 23(a), which are numerosity, typicality, commonality, and adequacy of representation; (2) demonstrate that common "questions of law or fact" predominate over "any questions affecting only individual members"; and (3) establish that the class action mechanism is "superior to other available methods for the fair and efficient adjudication of the controversy." In re

Nassau County Strip Search Cases, 461 F.3d at 225 (internal quotations and citation omitted) (reversing district court's denial of class certification motion in jail strip search case).

**B.   *Numerosity***

The numerosity requirement of Rule 23(a)(1) is satisfied by a showing that, due to the number of potential class members, joinder of individual members as named plaintiffs would be impracticable. See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.1995). In the case at bar, the numerosity of plaintiff's proposed class is supported by the deposition testimony of Niagara County Sheriff Thomas Beilen, who testified that the daily capacity of the NCJ is 500 detainees, and that the NCJ processes about 5,500 detainees annually. As part of discovery, defendants have proffered booking data for over 13,000 misdemeanor detentions. Plaintiffs estimate the class size to be over 8,000 individuals. The numerosity requirement is met.

**C.   *Commonality***

Under Rule 23(a)(2), plaintiff must also show commonality, that is, that the action raises an issue of law or fact common to the class. See Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 155 (2d Cir.2001). The Court finds that the class proposed by the plaintiffs fails to meet the commonality requirement as there are significant factual differences between the Policy 1109 detainees and the Policy 1201

detainees. The defendants admit that the Policy 1109 detainees are automatically subjected to a strip and body cavity search. Whether such a policy is constitutional will presumably be a matter of law. Policy 1201 detainees, on the other hand, are subject only to the "clothing change-out" procedure, and there are disputed issues of fact as to exactly what happens during that procedure, *e.g.*, whether or not the jail personnel view the detainees as they are changing. Because the two different sets of detainees, Policy 1109 detainees and Policy 1201 detainees, were subject to two different procedures, the Court finds that they should constitute two separate classes. Dividing the proposed class into two separate classes will enhance the commonality of the factual issues in each class.

**D.** *Typicality*

The typicality factor, set forth in Rule 23(a)(3), concerns whether the claim of the class representative is typical of the claims of the class. See Robinson, 267 F.3d at 155. Plaintiff must show that each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Id. (citation omitted). Here, the named plaintiffs claim that they were misdemeanor detainees, that they were strip searched without reasonable suspicion pursuant to defendants' Policy 1109, that Policy 1109 was unconstitutional, and that defendants are liable. Their claims thus arise from the same course of events and are based on the same legal arguments as the claims of every other Policy 1109 detainee class member. Therefore, the requirement of typicality is met with regard to Policy 1109 detainees.

With regard to Policy 1201, however, there is no named plaintiff who was "searched" pursuant to that Policy. The Court shall allow plaintiffs and their counsel 60 days to locate a class representative to represent the Policy 1201 detainees.

**E.**     *Adequacy of Representation*

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the class members, and especially the representative party, must not have interests antagonistic to one another. In re Joint Eastern and Southern Dist. Asbestos Litigation, 78 F.3d 764, 778 (2d. Cir. 1996). Both prerequisites of adequacy of representation are met in the instant case. Plaintiffs' attorneys have extensive experience in this type of litigation, and there is no indication that the class members would have interests antagonistic to one another.

**F.**     *Predominance and Superior Method*

The Court finds that the plaintiffs have met the requirements of Rule 23(b)(3) because they have shown that common questions predominate over questions affecting individual plaintiffs, and that a class action is the best method of adjudicating this case.

The predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." Amchem Prods. Inc. v.

Windsor, 521 U.S. 591, 623 (1997).  A plaintiff must show that the issues in the class action that are subject to generalized proof-and thus applicable to the class as a whole-predominate over those issues that are subject only to individualized proof.  See In re Visa Check/Master Money Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001).

        Here, the questions of whether the alleged policies and practice of the NCJ existed, whether they were unconstitutional, and whether defendants are liable are subject to generalized proof and are common to all potential class members.  These issues predominate over those issues that are subject to individualized proof.  In re Nassau County Strip Search Cases, 461 F.3d at 228.  Moreover, the division of the proposed class into two separate classes heightens the predominance of issues common to the class members in each of the respective classes.

        Further, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. "[W]hen plaintiffs are allegedly aggrieved by a single policy of defendants, such as the blanket policy at issue here, the case presents precisely the type of situation for which the class action device is suited since many nearly identical litigations can be adjudicated in unison." Id. at 228 (internal quotations and citation omitted).  Given the size of the class and the predominance of issues subject to generalized proof, the class action procedure will increase the efficiency of the litigation and the uniformity of the outcome.  In addition, under the circumstances of this case, it is unlikely that many members of the class would have the resources or desire to pursue their claims individually in separate actions.  Nor is it likely that separate actions would result in better outcomes for the claimants.  In light of the nature of the issues and the flexibility accorded to courts in handling class actions, it is

unlikely that the management of this case as a class action will present inordinate difficulties.  Mitchell, 2007 WL 1988716 at *5.

### G. *Rules 23(b)(2) and 23(c)(4)*

Having determined to certify the class under Rule 23(b)(3), the Court need not consider whether certification under Rule 23(b)(2) or partial certification under Rule 23(c)(4) would also be appropriate.  In re Nassau County Strip Search Cases, 461 F.3d at 230 n. 4.[1]

### **CONCLUSION**

For the reasons stated herein, the Court grants plaintiffs' motion for class certification, and it is therefore

ORDERED that the following two classes are certified:

Class One - Policy 1109 Detainees

All persons who have been or will be placed into the custody of he Niagara County Jail after being charged with misdemeanors, violations, violations or probation or parole, traffic infractions, civil commitments or other minor crimes, and having been committed to the Niagara County Jail based on criminal charges originating in the cities of Niagara Falls, North Tonawanda and Lockport, and were or will be strip searched upon their entry into the Niagara County Jail pursuant to the policy, custom and practice of the Niagara County Sheriff's Department and the County of Niagara. The class period commences on May 5, 2003 and extends to the date on which the Niagara County Sheriff's Department and/or the County of Niagara are enjoined from, or otherwise cease, enforcing their

---

[1] In their memorandum of law in support of the motion for class certification, plaintiffs "suggest" that the defendants be required to assist plaintiffs' counsel in providing notice to the absent class members.  It is the Court's hope that counsel will be able to work this out amongst themselves without Court intervention.

unconstitutional policy, practice and custom of conducting strip searches absent reasonable suspicion. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

Class Two - Policy 1201 Detainees

All persons who have been or will be placed into the custody of he Niagara County Jail after being charged with misdemeanors, violations, violations or probation or parole, traffic infractions, civil commitments or other minor crimes, and having been committed to the Niagara County Jail based on criminal charges originating in jurisdictions outside of the cities of Niagara Falls, North Tonawanda and Lockport, and were or will be strip searched upon their entry into the Niagara County Jail pursuant to the policy, custom and practice of the Niagara County Sheriff's Department and the County of Niagara. The class period commences on May 5, 2003 and extends to the date on which the Niagara County Sheriff's Department and/or the County of Niagara are enjoined from, or otherwise cease, enforcing their unconstitutional policy, practice and custom of conducting strip searches absent reasonable suspicion. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees;

and it is further

ORDERED that plaintiffs' attorneys of record are appointed as class counsel pursuant to Rule 23(g); and it is further

ORDERED that plaintiffs shall have 60 days from the date of this Order to identify and move for the intervention of a class representative for the class denominated "Class Two - Policy 1201 Detainees"; and it is further

ORDERED that this case is referred back to Magistrate Judge Hugh B. Scott pursuant to the nondispositive referral order filed July 21, 2006.

SO ORDERED.

s/ *Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED:  September 26  , 2008